## J. E. DAVIDSON AND J. B. THOMPSON V. THE STATE.

No. 1680.  Decided March 1, 1899.

Motion for Rehearing Decided March 15, 1899.

**1.  Plea of Former Conviction—Burden of Proof.**

On a trial for theft of cattle, where defendants interposed a plea of former conviction upon the ground that they had been already convicted for the theft of cattle taken at the same time and place as the ones involved in this prosecution, the burden of proving the plea by a preponderance of evidence was on the defendants. And when all the evidence except that of the defendants themselves was to the effect that the cattle were not taken at the same time and place, the plea is not sustained.

**2.  Plea of Former Acquittal—Theft from Different Owners.**

On a trial for theft of cattle, the property of different owners, an acquittal for the theft of one animal, the property of one owner, is not a bar to the prosecution for theft of an animal or animals belonging to another owner, notwithstanding all the cattle may have been taken at the same time and place and in one transaction, because the evidence might, in the first case, have been insufficient, and still have been amply sufficient to convict in the latter case.

**3.  Pleas of Former Conviction and Acquittal—Burden of Proof.**

Where there are special pleas of former conviction or acquittal on a prosecution for theft, the burden is upon the defendant to establish that the taking and transaction is one and the same, and not upon the State to establish that they were separate and distinct transactions.

ON MOTION FOR REHEARING.

**4.  Verdict Against Joint Defendants.**

Where on a joint trial of two defendants, the verdict was, "We the jury find the defendants' plea of former conviction untrue, and find them guilty as charged, and assess their punishment at two years confinement in the State penitentiary;" Held, the verdict shows that the jury intended to assess a punishment of two years confinement in the penitentiary against each defendant. Following Mootry v. State, 35 Texas Criminal Reports, 457, and Polk v. State, 35 Texas Criminal Reports, 495.

APPEAL from the District Court of Navarro. Tried below before Hon. L. B. COBB.

Appeal from a conviction for theft of one head of cattle; penalty, two years imprisonment for each defendant in the penitentiary.

The case is sufficiently stated in the opinion.

*L. M. Callaway* and *R. E. Dodson,* for appellant, filed an able brief on the motion for rehearing.

*Robt. A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellants were convicted of theft of one head of cattle, and the punishment of each assessed at confinement in the penitentiary for a term of two years, and they appeal.

In bar of the prosecution, they rely upon their pleas of former acquittal and conviction. The first ground of the motion for new trial is "that the verdict of the jury is contrary to the evidence, in this, to wit, the testimony showed clearly that the defendant had been tried and convicted in Limestone County." The second ground is "that the testimony of the defendant was uncontradicted, and showed that the taking of the Burney cattle, for which they had been tried and convicted in Limestone County, was one and the same transaction with the taking of the N. P. Johnson cattle, in this case." We will consider these two assignments together.

The first witness for the State, W. A. Burney, testified that he lived in Limestone County, and had four head of cattle stolen from him; that appellants in this case pleaded guilty in said county to the stealing of said cattle. The cattle so stolen ranged in witness' pasture (it being the Graham pasture). His pasture fence was down and witness had a very hard time to keep it up. There were parties hunting there, and left the gaps down. Witness' pasture is about three or four miles from the Texas Loan Agency pasture, where the Ivy and N. P. Johnson cattle were taken. His cattle run in a bunch to themselves. They never ran outside of witness' pasture, or with any one's cattle, and he never saw them with any other cattle. Those that were taken ran in a bunch to themselves, and a part of the bunch was very poor. The poor ones were not taken. The prosecuting witness, N. P. Johnson, testified that he lost one head of cattle on or about January 6, 1898; that his cattle were taken from the Texas Loan Agency pasture; that they ran with the Ivy cattle; that his pasture is three or four miles from the Burney pasture; that the pasture fence is bad, and the water gaps were all down; that this witness never saw his cattle running with the Burney cattle. The animal witness lost was a yearling, and ran with its mother all the time. The cow came home on the night the animal was stolen, but the calf came not. Witness Joe Wilson, for the State, testified: "I know the location of the Burney pasture, and also the location of the pasture adjoining. The lower pasture (which is the Burney pasture) runs down in Limestone County. There are three pastures between the Texas Loan Agency pasture, where Johnson's

cattle and Ivy's cattle were taken. The distance from the Texas Loan Agency pasture to the Burney pasture is about one and one-half miles. The gaps were down between the Burney pasture and the Texas Loan Agency pasture. The grass was better in the Graham pasture, and it was the largest pasture. I have seen N. P. Johnson's cattle one and one-half miles from home, down in the McDonald pasture (which is the Graham pasture), in which Burney's cattle run." The witness C. T. Bilbro testified that he had ridden over the Burney pasture, up into the Texas Loan Agency pasture, where the N. P. Johnson and Ivy cattle run; that he went through there the latter part of December, 1897; that the gaps and fences were in bad condition; that he did not have to open any gates in passing from one to the other. J. E. Davidson, one of the appellants, testified: "The Burney cattle that we were convicted for taking in Limestone County were with the N. P. Johnson and the Ivy cattle. They were all in one bunch, and in the Graham pasture, and we got all of the bunch. The bunch was scattered over a hundred yards. We rounded up the bunch and drove them away. * * * The fences and water gaps were all down." The brother of appellant, Will Davidson, testified that he had seen the Burney cattle up in the McDonald pasture, which is adjoining the Texas Loan Agency pasture, where the Ivy and Johnson cattle ranged. This is, in substance, all the testimony in the case. The evidence, as indicated above, does not show that the appellant's testimony is uncontradicted as to the cattle all being taken at one and the same time. It is true that no witness swears positively, as a fact, that they were not taken at one and the same time, yet all the witnesses except the appellant testify to circumstances that clearly indicate that they were not taken at one and the same time. The burden of proving the fact that they were taken at one and the same time is upon appellants, and the jury have decided the question against them, and we see no cause for disturbing their verdict.

The third ground of the motion for new trial complains of the court's charge, as follows: " 'If you do not believe from the evidence that the taking of the Burney cattle and the taking of the N. P. Johnson cattle occurred at one and the same time or place, then you will find the defendants' plea of former conviction untrue, and so say by your verdict,' which misdirection was a material error, and calculated to injure the rights of the defendants." And also in the fourth assignment the following portion of the court's charge, to wit: "The State does not have to prove that the cattle of N. P. Johnson were taken at a different time or place from the taking of the cattle of Burney, for which the defendants were convicted in Limestone County; but, to entitle defendants to be discharged on their plea of former conviction, the evidence must show that the cattle of Burney and of N. P. Johnson were taken at the same time and place, and, unless this is shown, you will, if you believe the defendants did in fact steal N. P. Johnson's cattle as herein explained, find defendants guilty." We do not

find any error in either instance. This court has uniformly held that, where appellant pleads former conviction to theft of cattle, the burden of proving or establishing his special plea by a preponderance of the evidence rests upon him. Hozier v. State, 6 Texas Crim. App., 501; Jones v. State, 13 Texas Crim App., 1; Willis v. State, 24 Texas Crim. App., 586.

The fifth and last ground of complaint is that the court erred in failing to give special charges numbers 1 and 2 asked by appellants. Charge number 1 is to the effect that, if the jury believe from the evidence that the defendants stole the cattle of N. P. Johnson at the same time and place that they stole the cattle of W. N. Ivy, for the stealing of which they were acquitted in Navarro County, you will find defendants not guilty. There was no error in the failure of the court to give this charge. In the case of Wright v. State, 17 Texas Criminal Appeals, 152, the court aptly says: "When the evidence shows that the cattle of two different owners were appropriated in a single transaction, the conviction of the accused for the theft of the cattle of one of the said owners will, upon the doctrine of autrefois convict, operate to bar a prosecution for the theft of the cattle of the other owner. But being charged in indictment of theft of the cattle of one of the owners, and tried upon that indictment and acquitted, the plea of autrefois acquit is not available in a prosecution upon an indictment charging the theft of the cattle of the other owner, notwithstanding the transaction be the same and the evidence identical; for, while such evidence might have been insufficient in the first instance, it might still be all sufficient in the last instance." Therefore it follows that the acquittal of the defendants of the taking of the Ivy cattle would not be a bar to a prosecution for the stealing of N. P. Johnson's cattle.

The second special requested charge is to the effect that the jury must believe, beyond a reasonable doubt, that the taking of the Johnson and Burney cattle were separate and distinct transactions before they could convict. It follows, from what we have heretofore said, that it was not error for the court to give this charge, because the burden of proof was upon appellants to show the fact that it was one and the same taking and transaction, and not upon the State to establish that they were separate and distinct transactions. No error appearing in the record, the judgement is affirmed.

*Affirmed.*

DAVIDSON, Presiding Judge, absent.

### ON MOTION FOR REHEARING.

BROOKS, JUDGE.—The judgment in this case was affirmed at a former day of this term and now comes before us on motion for rehearing.

Appellants, in their amended motion for rehearing, state that the verdict of the jury, as written on the indictment, reads as follows: "We the jury find the defendants' plea of former conviction untrue,

and find them guilty as charged, and assess their punishment at two years confinement in the State penitentiary. R. H. Hervey, foreman." Appellants' complaint is: "(1) That the verdict of the jury, and judgment rendered thereon, are void. (2) The judgment prescribing and decreeing appellants' punishment in the trial court is void. (3) Because the verdict upon which it is based is a joint verdict, and does not assess the punishment against the defendants severally, and because, said verdict being invalid and void, the court, in the judgment rendered, decrees that defendants be confined in the penitentiary for two years each; being an attempt to base a several judgment upon a joint verdict, when the only way the void verdict could have been corrected by the court was to set it aside, on the motion of defendants, and grant a new trial of the case." Whatever may have been the rule heretofore in reference to the construction of verdicts of this character, we hold that such a verdict as the one rendered in this case is not now subject to the criticism made to the same by appellants' counsel. As stated by the court in the case of Mootry v. State, 35 Texas Criminal Reports, 457, "That is certain which can be made certain." A bare inspection of the verdict in this case shows that the jury intended to assess a punishment of two years confinement in the penitentiary against each of the appellants. The judgment rendered thereon is in direct response to that verdict. In the Mootry Case, supra, the verdict there rendered was death, upon Mootry and Rolly; but we understand the effect of the decision in that case is to overrule the previous decisions of this court, holding verdicts of a similar kind to the one here under discussion void. A fair construction of the verdict in this case will indicate that the jury intended to inflict upon each of the appellants the punishment of two years confinement in the State penitentiary. In the consideration of a verdict, the first object is to ascertain what the jury intended to find; and this is to be done by construing the verdict liberally, with the sole view of ascertaining the meaning of the jury, and not under the technical rules of construction which are applicable to pleading. Miller v. Shackleford, 4 Dana, 271; Mays v. Lewis, 4 Texas, 38. And, where the intention of the jury is to be considered, it becomes the duty of the court to disregard a mere clerical error. Jeansch v. Lewis, 1 S. D., 609, 48 N. W. Rep., 128. The reasoning in the Mootry Case, supra, is cited with approval in the case of Polk v. State, 35 Texas Criminal Reports, 495. We can not agree with the contention of appellant's counsel that the verdict of the jury is void, as contended in their motion for rehearing.

We have carefully reviewed the other grounds of the motion, and do not find any merit in the same. The motion for rehearing is overruled.

*Motion overruled.*

DAVIDSON, Presiding Judge, absent.