**Ex parte Bridget JONES.**

**No. 09–00–447 CR.**

Court of Appeals of Texas, Beaumont.

Submitted Feb. 8, 2001.

Decided March 14, 2001.

Rehearing Overruled April 5, 2001.

Thomas O. Moses, Beaumont, for appellant.

Charles R. Roach, District Attorney, Kountze, for the State.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

PER CURIAM.

Bridget Jones, formerly know as Bridget Parks, appeals the trial court's denial of her application for writ of habeas corpus and motion to dismiss. The issue on appeal is whether, because of state and federal constitutional protections against double jeopardy, the trial court erred in denying her application and motion. We find that it did not.

In 1998, Jones was indicted for endangering a child, Megan Parks, on May 17, 1998, by driving a vehicle while intoxicated and wrecking the vehicle into a tree. Both Jones and the State waived a jury trial. The indictment was read and Jones entered her "not guilty" plea. The State agrees jeopardy attached at that point.[1] Jones then presented a motion to dismiss based on the "fatal variance" between the victim's name as shown in the indictment (Megan Parks) and the victim's name that would be proved at trial ( Megan Jones). The two names, Megan "Jones" and Megan "Parks," refer to the same child, who is asserted by Jones to be her natural daughter. The State joined in Jones's motion to dismiss. The trial court granted the dismissal and entered a judgment of acquittal.

Subsequently in 1999, Jones was indicted again for endangering a child on May

---

1. For non-jury trials in Texas state courts, jeopardy attaches when both sides have announced ready and the defendant has pleaded to the charging instrument. *State v. Torres,* 805 S.W.2d 418, 421 (Tex.Crim.App.1991). For federal purposes, jeopardy attaches in a non-jury trial when the first witness is sworn or the judge begins to receive evidence. *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977).

17, 1998, by driving a vehicle while intoxicated and wrecking the vehicle into a tree. This second indictment was the same as the first, except it named Megan Jones as the child.[2] Jones then filed her motion to dismiss and application for habeas corpus. The trial court denied her motion and application, and Jones brings that denial for our review.

Jones maintains the double jeopardy clauses of the federal and state constitutions bar the State from successively prosecuting her for the same offense. The Fifth Amendment of the United States Constitution provides that a person shall not be "... subject for the same offense to be twice put in jeopardy of life or limb...." U.S. CONST. amend. V. The Texas Constitution provides: "No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction." TEX. CONST. art. I, § 14. Conceptually, the state and federal constitutional provisions are identical. *Phillips v. State*, 787 S.W.2d 391, 393 n. 2 (Tex.Crim.App.1990). The two provisions protect against: (1) a successive prosecution for the same offense after acquittal; (2) a successive prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Iglehart v. State*, 837 S.W.2d 122, 127 (Tex.Crim.App.1992). This case involves the first of these protections.

Relying on *Fulmer v. State*, 731 S.W.2d 943 (Tex.Crim.App.1987), and *Smotherman v. State*, 415 S.W.2d 430, 431 (Tex. Crim.App.1967), the State argues Jones is not being tried for the same offense because the names of the victims in the two

indictments are different. In *Fulmer*, the Court held there was no double jeopardy violation. The State first prosecuted Fulmer for an offense committed against Kim "Nguyet." Fulmer was acquitted when the evidence showed the victim's last name was actually "Ngo." Subsequently, the State prosecuted Fulmer for the same type of offense against Kim "Ngo." *Fulmer*, 731 S.W.2d at 944. Justice Clinton, in a concurring opinion that was adopted by the majority, noted:

Manifestly in the instant cause 'Kim Nguyet' is different from 'Kim Ngo.' The names are neither the same nor *idem sonans*. Proof of one will not prove the other. That trial on the indictment resulting in an acquittal is not void or fundamentally defective is of no moment. The offenses are not the same.

*Id.* at 948.

Though *Smotherman* was not decided on double jeopardy grounds, the Court considered that issue. *See Smotherman*, 415 S.W.2d at 430–31. In *Smotherman*, the Court held an acquittal in the first trial, where the State proceeded to trial on an indictment erroneously alleging ownership of a stolen vehicle, did not prevent the State from trying Smotherman on an indictment alleging ownership in another person. *Id.* The *Smotherman* Court stated: "The rule appears to be that if the name of the injured party in the two indictments or informations is not the same, the plea of former acquittal is ordinarily bad on its face." *Id.* at 431.

Jones counters with *Ex parte Coleman*, 940 S.W.2d 96 (Tex.Crim.App.1996). The State first prosecuted Coleman for theft of property from "a person unknown" and

---

**2.** The first indictment alleged that appellant, "... on or about 5–17–98 ... did ... recklessly, and with criminal negligence, engage in conduct that placed Megan Parks, a child younger that 15 years of age, in imminent danger of death, bodily injury, and physical and mental impairment, by driving vehicle while intoxicated and wrecking vehicle into a tree."

The second indictment alleged that appellant, "... on or about 5–17–98 ... did ... recklessly, and with criminal negligence, engage in conduct that placed Megan Jones, a child younger that 15 years of age, in imminent danger of death, bodily injury, and physical and mental impairment, by driving vehicle while intoxicated and wrecking vehicle into a tree."

she was acquitted. *Id.* at 97. The State later prosecuted her for theft of property from R. Reese. The conduct alleged in each indictment was the same. At the habeas corpus hearing, the State had affirmed that the evidence to be presented at the second trial would be the same as that it had presented at the first trial. *Id.* at 98. The *Coleman* Court thus determined that the prosecution under the second indictment was for the same offense for which Coleman had already been acquitted and thus was barred by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. *Coleman*, 940 S.W.2d at 100. The Court further stated that "it must be part of our present analysis to look at the proof when the State has alleged some aspect of the offense in a prosecution as unknown." *Id.* at 99.

In arguing that *Coleman* controls here, Jones contends the two indictments alleged the same conduct and same criminal act and thus are the same offense. Jones further asserts that if a second trial is permitted, the State could

> use the evidence of the Appellant to show (and prove) that the victim/complainant is the same person in this cause as she was in the first cause. Considering the evidence relied upon by the State and the Appellant in the first trial, it is patently clear that the two indictments charge the same offense. The State now wants to try the Appellant again with the same evidence, and particularly evidence furnished by the Appellant to prove the fatal variance, and the Double Jeopardy Clause prohibits this action.

However persuasive Jones's argument may be, *Coleman* did not overrule *Fulmer* and *Smotherman,* but rather distinguished them. As the *Coleman* Court explained:

The State made a mistake in pleading the complainants in those cases, [*Fulmer and Smotherman*] and the defendants were acquitted of offenses against the erroneously pleaded people. We said that the State could retry the defendants in those cases for offenses committed against patently different people.[3] In this cause, however, we can be certain that appellant was acquitted of the same offense in the first trial for which the State wants to try her in the second, though the first indictment stated that the complainant was unknown....

It may be contended that it is inconsistent with *Fulmer* and *Smotherman* to inspect the actual trial proof; that as in those cases we should only examine the indictments to determine whether the offenses are the same. Yet it must be part of our present analysis to look at the proof when the State has alleged some aspect of the offense in a prosecution as unknown.... If we confined ourselves to an examination of the indictments, the State could avail itself of a "dress rehearsal" simply by alleging an unknown element in the first indictment returned in a particular cause. There would be no way to tell from a comparison of the face of that indictment and any subsequent one whether they charged the same offense. Here the language of the first indictment, with its unknown element, may or may not refer to the same offense as that alleged in the succeeding indictment. A formalistic reading of the first indictment does not define the term "unknown" adequately enough to allow us to conduct a double jeopardy analysis. But once we consider the evidence relied on by the State at the first trial in this cause, it is patent that the two indict-

---

**3.** The sentence "We said that the State could retry the defendants in those cases for offenses committed against *patently different people*" [emphasis added] is troublesome as it relates to *Fulmer.* In that case, there were not two different persons who were victims, but rather, there was a misidentification of a single victim. Kim "Ngo" was mistakenly named in the indictment as Kim "Nguyet." *Fulmer,* 731 S.W.2d at 944.

ments do indeed charge the same offense.

Quite simply, the State now wants to try appellant again for the same offense, using the same evidence. The Double Jeopardy Clause prohibits this. Once the State goes to trial on an indictment alleging some element of the offense as "unknown to the grand jury" and jeopardy attaches and terminates, the State may not retry a defendant for the same violation of the same penal statute simply by alleging a real name instead of "unknown." This is a manifest double jeopardy violation and appellant is entitled to habeas corpus relief. . . .

*Coleman*, 940 S.W.2d at 99–100 (footnote omitted).

Thus, *Coleman* requires us to "look at the proof when the State has alleged some aspect of the offense in a prosecution as *unknown.*" *Id.* at 99 (emphasis added). But are we to look at proof in other cases as well? Perhaps. In *Parker v. State*, 985 S.W.2d 460, 464 n. 3 (Tex.Crim.App.1999) [4], the Court stated:

Appellant assumes that Article 21.04 requires that the charging instrument will on its face suffice to establish a bar to any subsequent prosecution for the same offense. However, as stated by Professors Dix and Dawson, "In the modern context, this assumption is unrealistic," G. Dix & R. Dawson, Texas Criminal Practice and Procedure § 20.104 (1995), particularly because a charging instrument is only the starting point in a

double jeopardy analysis. Generally, double jeopardy bars only offenses for which proof was offered at trial[;] thus it will not be apparent until after trial which offenses will in fact be barred by jeopardy. *Garcia v. State*, 981 S.W.2d 683 (Tex.Cr.App.1998); *Ex parte Goodbread*, 967 S.W.2d 859 (Tex.Cr.App.1998).

However, it appears that we still are not to look at the proof in *Fulmer* situations.[5] While *Coleman* distinguishes *Fulmer* (even if in a troublesome manner), it clearly did not overrule that decision. *Coleman*, 940 S.W.2d at 99–100. In view of the apparent continued viability of *Fulmer*, which is directly on point here, we are obliged to apply it, and look forward to further consideration of this issue by our Court of Criminal Appeals.

Accordingly, we affirm the trial court's denial of Bridget Jones's application for writ of habeas corpus and motion to dismiss.

AFFIRMED.

---

**4.** We also are mindful of the difficulties in looking at the proof as expressed by Justice Meyers in his concurring opinion in *Ex parte Goodbread:*

But if we have to look to the proof at trial to determine what is jeopardy barred, then to what has jeopardy "attached" before proof is offered? After all, we know jeopardy attaches in a jury trial the moment the jury is empaneled and sworn. *E.g., Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *Ortiz v. State*, 933 S.W.2d 102 (Tex.Crim.App.1996). Is the majority suggesting jeopardy does not attach until proof is offered? Certainly not, but we are not enlightened in this regard.

*Ex parte Goodbread*, 967 S.W.2d 859, 861–62 (Tex.Crim.App.1998)

**5.** Confusion in this area is highlighted further by *Sanchez v. State*, 845 S.W.2d 273 (Tex. Crim.App.1992), a pre-*Coleman* case involving misidentification of the offense's location rather than the victim's identity as in *Fulmer*. In *Sanchez*, the Court of Criminal Appeals found the State was precluded from litigating its allegations in a second case as the allegations were the same as those in the first case that had been dismissed on the State's motion after jeopardy had attached. *Id.* at 276.